# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| SUMMER GIVENS, § | | |
| *Plaintiff*, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 4:10-CV-02846 |
| § | | |
| WILL DO, INC. HOUSTON and § | | |
| PAMELA J. OSGOOD, § | | |
| *Defendants*. § | | |

## MEMORANDUM, RECOMMENDATIONS and ORDER

Defendants Will Do, Inc. Houston and Pamela Osgood move for partial summary judgment (Dkt. 22) on plaintiff's Fair Labor Standards Act claims. The motion should be granted in part and denied in part.

## Background

Defendants own and operate a Houston franchise called It's Just Lunch ("IJL"), a membership-based match-making service company whose mission is to "coordinate the dating lives of busy professionals throughout the U.S. and the world." (Dkt. 22). Plaintiff Summer Givens began working for IJL Houston in October 2008, first as a Coordinator and then as a Senior Coordinator. (Dkt. 1). The duties of a Coordinator included contacting clients to arrange or coordinate the dates selected by the Directors, obtain post-date feedback, and provide customer service over the phone. (Dkt. 1, 22, 24-2). Givens was terminated on June 30, 2010 (Dkt. 22) and brought this suit for unpaid overtime on August 10, 2010.

Defendants have filed this motion for partial summary judgment asserting that (1) Givens was exempt from the overtime law as an administrative employee; (2) any unpaid overtime should be calculated using the fluctuating workweek method described in 29 C.F.R. § 778.114; (3) the applicable statute of limitations is 2 years because there is no evidence of a willful violation; and (4) Givens has no evidence supporting her claims for sick leave and vacation pay. (Dkt. 22).

## **Legal Standard**

Summary judgment is appropriate under Rule 56 when the record and pleading evidence show that no genuine issue of material facts exists and that, as a matter of law, the movant is entitled to judgment. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). The burden is on the movant to establish that there is no genuine issue of material fact. *Terrebonne Parish School Bd. v. Columbia Gulf Transmission Co.,* 290 F.2d 303, 310 (5th Cir. 2002).

Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). This burden is not satisfied with conclusory allegations, unsubstantiated assertions, or merely a 'scintilla' of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Rather, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial." Id.* at 587 (*quoting* Fed. R. Civ. P. 56(e)).

## Analysis

**1. Administrative Exemption of the FLSA**

Minimum wage and maximum hour provisions of the FLSA do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). In order to qualify for this exemption, the employee must (1) be compensated at a salary of at least $455 per week, (2) have a primary duty of performing "office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) have a primary duty that includes "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200**.** The burden of proving such an exemption lies with the employer. *Samson v. Apollo Resources, Inc.,* 242 F.3d 629,636 (5th 2001).

Here, it is undisputed that Givens was compensated more than $455 a week, so the first element of the exemption is met. (Dkt. 22-6).

    **A.**    **Work Directly Related to Management or General Business Operations**

The parties dispute whether plaintiff's primary duties were directly related to general business operations. Primary duty refers to the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The determination "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.* For the administrative exemption to apply, "an employee

3

must perform work directly related to assisting with the running or servicing of the business." 29 C.F.R. § 541.201(a).

Plaintiff's primary duties as a Coordinator consisted of contacting clients that Directors have matched in order to arrange dates, receive post-date feedback, and relay messages to the Directors. Givens was also responsible for maintaining the accuracy of the clients' files and providing general customer service over the phone to clients. These types of duties are arguably the very sort of match-making services which the defendants were in business to provide, as opposed to "functional areas" related to general business operations, such as accounting, procurement, advertising, human resources, etc. *See* 29 C.F.R. § 541.201(b). Defendants argue that Givens was the "public face and voice of the office" (Dkt. 22), but plaintiff vehemently contests this claim (Dkt. 24). If defendants are correct, then plaintiff might well be performing work directly related to defendants' public relations, which would qualify as a functional area of general business operations. However, these are genuine issues of material facts not susceptible to summary judgment.

### B. Exercise of Discretion and Independent Judgment

For the administrative exemption to apply, the employee's "primary duty must include the exercise of discretion and independent judgment with respect to matters of significance" which involves "the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). "The exercise of discretion and independent judgment implies that the employee

has authority to make an independent choice, free from immediate direction or supervision" and "must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(c) and (e).

Defendants argue that Givens had to use considerable discretion in matching clients and coordinating dates. However, it is undisputed that match-making was the primary duty of the Directors and not of the Coordinators; Givens only occasionally performed match-making on an as-needed basis. (Dkt. 22, 24, 27). Therefore, even if plaintiff was required to exercise discretion and independent judgment while match-making, it was not her primary duty and cannot be used as a basis for the administrative exemption. Defendants also argue that Givens was required to maintain customer satisfaction, which was very important to defendants' business. However, an employee "does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly." 29 C.F.R. § 541.202(f). Customer satisfaction is important for any employee, exempt or not, whose job requires interacting with customers. Finally, the parties dispute the nature and extent of plaintiff's reliance on defendant's manuals and scripts in performing duties such as gathering post-date feedback and coordinating dates. Dkt. 24-1, Ex. A; Dkt. 27 at 4-5. Given these disputed facts concerning plaintiff's exercise of discretion and independent judgment, summary judgment is inappropriate on the administrative exemption defense.

## 2. Calculation of Unpaid Overtime Compensation

If Givens were to prevail on her overtime claim, defendants argue that the amount due must be calculated using the fluctuating workweek method described in 29 C.F.R. § 778.114(a), and applied by the Fifth Circuit in *Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135, 1138-39 (5th Cir. 1988). Givens responds that this DOL bulletin does not apply in cases where an employee has been misclassified as exempt, and that this court should adopt the method of overtime calculation espoused by *In re EZPawn LP Fair Labor Standards Act Litigation,* 633 F.Supp.2d 395 (W.D. Tex. 2008), which expressly repudiated the *Blackmon* holding. Defendants' motion should be denied, although not for the reasons offered by Givens.

An employee who works more than 40 hours in a given week is entitled to compensation at "one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). While the key term "regular rate" is not defined in the statute, the Supreme Court early on declared that it means "pay by the week, to be reduced by some method of computation to hourly rates." *Overnight Motor Transp. Co. v. Missel,* 316 U.S. 572, 579 (1942). The Act does not require an employer to compensate employees on an hourly rate basis; their earnings may be determined in any number of other ways, such as a piece rate, day rate, job rate, commission, or salary. 29 C.F.R. § 778.109. When modes of payment other than an hourly rate are used, the amount of overtime due must be calculated by converting the employee's weekly compensation to a regular hourly rate for each week.

6

*Missel*, 316 U.S. at 580. The Wage Hour Administrator has issued a comprehensive set of bulletins describing the proper method for computing the regular rate of pay in such circumstances. 29 C.F.R. §§ 778.110 – 778.120.

The general rule is that "[w]age divided by hours equals regular rate." *Missel,* 316 U.S. at 580 n.16; 29 C.F.R. § 109. When an employee is paid a weekly salary, this formula is modified slightly: the regular hourly rate is computed by "dividing the salary by the number of hours *which the salary is intended to compensate*." 29 C.F.R. § 778.113(a) (emphasis added). This modification is necessary to accommodate two basic types of salary arrangements: (1) fixed pay for regular hours; and (2) fixed pay for variable or fluctuating hours. Section 778.113(a) illustrates the regular rate and overtime pay calculation in the former case. Section 778.114(a) does the same in the latter.

The primary difference between the two calculations lies with the denominator of the wage/hour quotient. When the parties understand that the salary covers only a certain number of hours (say, 40) in a workweek, then the regular rate equals pay divided by 40 hours, instead of by all hours actually worked that week. 29 C.F.R. § 778.113(a). This has two necessary consequences: (1) the regular rate is higher, because the hours denominator is lower; and (2) unpaid overtime equals time and a half for all overtime hours, because no compensation has been received for hours worked in excess of 40. By contrast, when the parties understand that the salary covers all hours worked, whether many or few, then the

7

regular rate equals pay divided by all hours actually worked. 29 C.F.R. § 778.114(a).[1] This has two results: (1) the regular rate is lower, because the denominator is higher; and (2) unpaid overtime equals one-half the regular rate for all overtime hours, because the employee has already received straight-time compensation for all hours worked, including overtime. Because this fluctuating workweek method of calculating unpaid overtime results in a substantially smaller overtime bill, the parties often dispute which method is appropriate for non-exempt salaried employees. *See Blackmon v. Brookshire Grocery Co.,* 835 F.2d 1135, 1138-39 (5th Cir. 1988) (applying § 778.114(a)); *Hopkins v. Texas Mast Climbers, L.L.C.,* 2005 WL 3435033 (S.D. Tex. 2005) (applying § 778.113(a)). Because it is neither a defense nor an exemption to FLSA coverage, the employee bears the burden of proving that the fluctuating workweek method does not apply. *Samson v. Apollo Resources, Inc.*, 242 F.3d 629, 636 (5th Cir. 2001).

The parties here dispute whether the fluctuating workweek formula is appropriate on these facts. In addition to the factual dispute, however, Givens also raises a legal objection to the application of the fluctuating workweek formula. Notwithstanding that this formula was approved and applied by the Fifth Circuit in *Blackmon,* Givens argues that it violates the statutory overtime pay requirements of 29 U.S. C. § 207. She relies chiefly on a recent decision from another district, *In re EZPawn LP Fair Labor Standards Act Litigation,* 633 F.Supp.2d 395 (W.D. Tex. 2008). In that decision, Magistrate Judge Andrew Austin refused

---

[1] This method of overtime payment cannot be used if the salary is insufficient to compensate the employee at a rate not less than the minimum wage. *Id.*

to follow *Blackmon* on the grounds that it "is wholly inconsistent with the FLSA, and cannot be reconciled with the purposes of the Act." *Id.* at 406. I must respectfully disagree with my good friend and colleague from the Western District, and not simply because I was appellate counsel for the employer in *Blackmon*.

*EZPawn*'s holding rests primarily upon the following propositions:

- The fluctuating workweek formula for calculating unpaid overtime compensation, as applied in *Blackmon,* is a departure from the "traditional method."

- The fluctuating workweek formula cannot be used to calculate damages for a violation of the Act.

- In misclassification cases, it is impossible for the "clear mutual understanding" element of the § 778.114(a) to be satisfied.

None of these propositions are correct.

***Traditional method.*** Under *Blackmon,* when an employer and employee have agreed on a fixed salary for varying hours, the regular rate is determined "by dividing the actual hours worked each workweek into the fixed salary," and the unpaid overtime is then computed "by multiplying all hours over 40 in the workweek by ½ the regular rate for that workweek." 835 F.2d at 1138-39. The *EZPawn* opinion contrasts this *Blackmon* formula with what it calls the "traditional method" of determining overtime compensation due under § 207(a):

> Take as an example an employee earning $250 per week, and assume she works 50 hours one week. If the traditional method is used, the regular rate for the employee

would be $6.25 per hour, and she would be entitled to overtime pay of $93.75 (10 hours times one-and-a-half of the regular rate, or (.375 per hour). If the flexible workweek method is used, the regular rate is $5.00 per hour, and the overtime premium would be $25 (10 hours times half the regular rate, or $2.50). Thus, the flexible workweek method results in overtime 375% lower than the traditional method.

633 F.Supp.2d at 404. Although the opinion does not spell out this "traditional" formula, it can be deduced arithmetically from the passage above: (1) calculate the regular rate as weekly pay divided by 40 hours (*not* all hours worked), and (2) multiply overtime hours by 1 ½ times the regular rate (*not* 50% of that rate).

The problem with this "traditional method" is that it is contrary to tradition. Nothing in the statute specifies calculating the regular rate in this manner. *EzPawn* cites no regulation or caselaw indicating that the regular rate should be based on non-overtime hours only.[2] In fact, the DOL bulletins quoted in the opinion uniformly declare the opposite. 29 C.F.R. § 778.109 (the regular rate "is determined by dividing [the employee's] total remuneration for employment . . . in any workweek *by the total number of hours actually worked by him in that workweek* for which such compensation was paid.")(emphasis added); 29 C.F.R. § 778.113(a) ( "If the employee is employed on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary *by the number of hours which the salary is intended to compensate.*"(emphasis added). Neither

---

[2] Givens cites a Fifth Circuit Pattern Jury Charge (§ 11.1), but such instructions do not have the force of law, nor do they have any persuasive force when, as here, they contradict existing circuit precedent. *Cf. United States v. Masat*, 948 F.2d 923, 928 (5th Cir. 1991) (pattern jury instructions may be useful guides, but are not binding on a trial court).

section supports *EZPawn*'s method of basing the regular rate solely on the first 40 hours in a workweek.

Nor do any of the other sections discussing how the regular rate applies to particular types of pay arrangements. On the contrary, every one of these guidelines follows the methodology applied by *Blackmon* and § 778.114 — the regular hourly rate is based on all hours worked, and the overtime premium is one-half that rate times the number of overtime hours.[3] In short, no trace of *EZPawn*'s "traditional method" can be found in any of the

---

[3] *See* **§ 778.110 Hourly rate employee** ("For overtime hours of work the employee must be paid, in addition to the straight time hourly earnings, a sum determined by multiplying one-half the hourly rate by the number of hours worked in excess of 40 in the week."); **§ 778.111 Pieceworker** (regular rate computed by adding total earnings from piece rates and all other sources, which sum "is then *divided by the number of hours worked in the workweek* for which such compensation was paid.... For overtime work the pieceworker is entitled to be paid, in addition to the total weekly earnings at this regular rate for all hours worked, a sum equivalent to *one-half this regular rate of pay* multiplied by the number of hours worked in excess of 40 in the week."); **§ 778.112 Day rates and job rates** ("If the employee is paid a flat sum for a day's work or for doing a particular job, ... his regular rate is determined by totaling all the sums received at such day rates in the workweek and *dividing by the total hours actually worked*. He is then entitled to *extra half-time pay* at this rate for all hours worked in excess of 40 in the workweek.); **§ 778.115 Employees working at two or more rates** ("total earnings (except statutory exclusions) are computed to include his compensation during the workweek from all such rates, and are then *divided by the total number of hours worked at all jobs*."); **§ 778.118 Commission paid on a workweek basis** ( total earnings are "*divided by the total number of hours worked* in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid *extra compensation at one-half of that rate* for each hour worked in excess of the applicable maximum hours standard."); **§ 778.119 Deferred commission payments – general rules** ("The additional compensation for that workweek must be not less than *one-half* of the increase in the hourly rate attributable to the commission for that week multiplied by the number of hours worked in excess of the applicable maximum hours standard in that workweek."); **§778.120 Deferred commission payments not identifiable as earned in particular workweeks** (commission allocable to a workweek "is *divided by the total number of hours worked* in that week to get the increase in the hourly rate. Additional overtime is computed by multiplying *one-half* of this figure by the number of overtime hours worked in the week."). (emphasis added in italics).

interpretive guidelines written by the agency in charge of administering the Act since its passage in 1938.

Nor is any sign of that "traditional method" evident in the Supreme Court antecedents to § 778.114. *Overnight Transport Co. v. Missel*, 316 U.S. 572 (1942), involved an employee paid a fixed weekly wage for working irregular hours up to 80 in a workweek. The Supreme Court rejected the employer's argument that no overtime is due when the weekly wage is high enough to cover overtime hours at one and a half times the minimum wage rate. The Court further held that an employee is entitled to overtime based not on the minimum wage, but on the "regular rate at which he is employed." 29 U.S.C. § 207(a). Noting that this term was not defined in either the statute or the legislative history, the Court defined the term as follows: "Wage divided by hours equals regular rate." 316 U.S. at 580, n.16. This quotient was held to apply to any employee paid "fixed weekly compensation for hours, certain or variable." *Id.* This same formula has been applied to determine the regular rate in other factual settings. *See e.g., Walling v. Younger-Reynolds Hardwood Co.,* 325 U.S. 419 (1945) ("In the case of piece work wages, this regular rate coincides with the hourly rate actually received for all hours worked during the particular workweek, such rate being the quotient of the amount received during the week divided by the number of hours worked.") (citing *Missel).*

In reaching its conclusion, the *Missel* court cited and followed existing circuit precedent, including the Fifth Circuit's decision in *Warren-Bradshaw Drilling Co. v. Hall,*

124 F.2d 42, 44 (5th Cir. 1941), which held that absent agreement otherwise, the regular rate "may properly be determined by dividing the total pay each week by the total hours worked." The Supreme Court also cited with approval the Sixth Circuit's decision in *Bumpus v. Continental Baking Co.*, 124 F.2d 549, 553 (6th Cir. 1941), which held that "[f]or each overtime hour for which appellant received his regular rate he is entitled only to additional half-time pay."

Finally, the *Missel* Court relied upon the Wage Hour Administrator's persuasive reading of the Act found in Interpretative Bulletin No. 4. *See* 316 U.S. at 580 n.17. Although not reprinted in the *Missel* opinion, Interpretative Bulletin No. 4 (originally issued 1938, revised November 1940) sets out the same fluctuating workweek formula currently described at greater length in § 778.114[4]— divide weekly pay by hours worked to determine regular rate, then multiply ½ regular rate by overtime hours to determine unpaid overtime. There can be no question that § 778.114 is a proper interpretation of the Act and consistent with *Missel,* because *Missel* relied upon and expressly approved § 778.114's direct precursor.

---

[4] The relevant text of Interpretative Bulletin No. 4 reads as follows:
"**Salaried Employees – Irregular or Fluctuating Number of Hours**
**12.** If an employee earns $23 per week but works a fluctuating number of hours, his regular rate of pay will be the average hourly rate each week. Suppose that during the course of four weeks the employee works 40, 46, 50, and 41 hours. His regular hourly rate of pay each week is approximately 57.5 cents, 50 cents, 46 cents, and 56.1 cents, respectively. For the first week the employee is entitled to be paid $23; for the second week $24.50 ($23 + [6 hours x 25 cents]) or ([40 hours x 50 cents] + [6 hours x 75 cents]); for the third week $25.30 ($23 + [10 hours x 23 cents]) or ([40 hours x 46 cents] + [10 hours x 69 cents]; for the fourth week approximately $23.28 ($23 + [1 hour x 28 cents]) or ([40 hours x 56.1 cents] + [1 hour x 84 cents])."

In sum, the *Blackmon* method of computing unpaid overtime has an impeccable pedigree, stretching back from the current § 778.114 to *Missel,* then to the earliest circuit decisions, and finally to Interpretative Bulletin No. 4, issued the same year the Act was passed. The *Blackmon* formula is no departure from tradition; it *is* the tradition.

***Retrospective application.*** *EZPawn* also questions *Blackmon*'s reliance upon § 778.114 as a means of retroactively calculating "damages" for violations of the Act, especially in misclassification cases. It is argued that the bulletin is forward-looking, intended only as a permissible way to pay an employee, and not as a remedial measure. *EZPawn,* 633 F.Supp. at 400-05; *see also Urnikis-Negro v. American Family Prop. Servs.,* 616 F.3d 665, 677-79 (7th Cir. 2010) (finding this reasoning "persuasive").

In the first place, it should be noted that *Blackmon* did not rely solely on § 778.114 regarding fluctuating workweeks. The opinion also cites § 778.109, which sets out the general rule for determining the regular rate. As § 778.109 explains, the succeeding sections were intended to "give some examples of the proper method of determining the regular rate of pay in particular circumstances", such as employees paid piece-rates, day rates, job rates, weekly salary, etc. Thus *Blackmon* recognized that § 778.114 was merely a variation on a theme, and not an exception to the general rule for determining the regular rate. *See also Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 491, 424-25 (1945) ( "[The regular rate] is not an arbitrary label chosen by the parties; it is an actual fact. Once the

parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation. . .").

It is true that § 778.114 is forward-looking, like all its companion bulletins following § 778.109. These bulletins explain how employers can comply with the Act using different types of compensation arrangements. By following these examples, employers can determine how much is legally owed to employees for overtime hours worked. Under the FLSA's civil remedy provisions, an employer who violates the Act is liable to the employee "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). In other words, the amount legally owed is the amount legally due. There is no special or different method of calculating overtime "damages" for remedial purposes.

So while there are no separate regulations or bulletins specifying how to calculate "damages" retrospectively, this is not an oversight by the Wage Hour Administrator. The measure of damages is "unpaid overtime compensation," and mathematical computation of that amount does not depend on whether it is paid timely or after suit is filed. A separate set of damage regulations would be an exercise in redundancy.

***Misclassification cases***. *EZPawn* complains that § 778.114 is particularly unsuited for misclassification cases because it would be "awkward" or even "impossible" to apply the "clear mutual understanding" element, given that both the employer and the employee

would be acting on the assumption that the employee was exempt from overtime. *EZPawn*, 633 F.Supp. 2d at 402, 405 n. 10.

This claim simply misreads § 778.114. The "understanding" referred to is *not* whether the employee is exempt or not, but whether "the fixed salary is compensation . . . for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 29 C.F. R. § 778.114(a). In other words, what number of hours does the fixed salary cover? If the parties understood that the salary was compensation for all hours worked each week, then § 778.114 prescribes how to calculate the overtime premium due. If the parties understood that the salary was intended to cover only a fixed (i.e. non-fluctuating) number of hours, then the method of calculation is prescribed by § 778.113(a). Both computations are applications of the general principle that the employee's regular rate "is determined by dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek *for which such compensation was paid*." 29 C.F.R. § 778.109.

Any salaried employee, exempt or not, is likely to have some understanding of the hours she is expected to work each week, and hence an understanding of the hours for which her salary is paid. Some employers do not apply a fixed work schedule to salaried jobs, but expect employees to work as many hours as needed to get the job done. In that case, a salaried employee would likely understand that her salary was intended to cover all hours worked, regular as well as overtime. That was true of the meat market managers in

*Blackmon.* 835 F.2d at 1137. Other employers make it clear at the time of hiring that the employee's salary will be based on a fixed number of hours in the workweek; in such cases the regular rate is based on the agreed upon number of hours. *See, e.g., Hopkins v. Texas Mast Climbers, L.L.C.,* 2005 WL 3435033 (S.D.Tex. 2005) (declining to apply § 778.114 where employee testified without contradiction that his salary was based on a 40 hour workweek); *Bumpus v. Continental Baking Co.,* 124 F.2d 549, 553 (6th Cir. 1941) (employee's salary based on 48 hour week).

In other cases, such as this one, the parties' understanding of the hours covered by the fixed salary is a matter of genuine dispute. Givens declares in her affidavit that during her job interview she was told that her hours of work were 9:00 a.m. to 6 p.m. Monday through Thursday and 8 a.m. to 4:00 p.m. on Friday; that the only time anyone would stay late was if a client was in the office, but that would be the Director's responsibility not hers; that she should never, or only very rarely, have to stay late; that she was never told that her work hours would fluctuate from week to week, nor that if she did have to work overtime she would not receive overtime pay; that she would not have taken the job had she known she was expected to work 50 to 60 hours a week; and that she turned down two other job offers because she thought she would be paid $30,000 a year for working 40 hours a week. (Dkt. 24-1, at 2-3).

Defendants respond that Givens regularly worked more than 40 hours a week for over a year and a half without complaint, and so by this course of conduct she and her employer

arrived at a "clear mutual understanding" that her salary would cover all hours worked. There is some authority for this argument. *See e.g., Griffin v. Wake County,* 142 F.3d 712, 716-17 (4th Cir. 1998). However, neither *Griffin* nor the other cases cited by the defendants involve facts and initial representations similar to those detailed in Givens's affidavit. Moreover, Givens claims that when she made a complaint about her first paycheck not being deposited on time, defendant Osgood responded angrily that "she had never had an employee approach her about money so quickly after being hired, and this was not something that should take time away from my day because it would throw the whole office off track." (Dkt. 24-1, at 3). In light of this reaction, a reasonable fact-finder might well infer that Givens's subsequent silence about her long work hours was the product of intimidation rather than implicit agreement.

This is all grist for a jury trial, not summary judgment. Defendants' motion for summary judgment on the fluctuating workweek overtime formula should be denied, not because this is a misclassification case, but because there is a genuine factual dispute about the parties' understanding of how many work hours Givens's salary was intended to compensate.

3. **Other Claims**

Defendants also seek a summary judgment that the statute of limitations applicable to plaintiff's claim is two years, rather than the three year period applicable to willful violations. (Dkt. 22). 29 U.S.C. § 255(a). Plaintiff does not contest this proposition, given

18

that her employment began and ended well within the two year limitations period, which extends back to August 10, 2008. (Dkt. 1). Summary judgment should be granted as to the applicability of the two year limitations period.

Likewise, defendants have argued that plaintiff has abandoned her claim for vacation and sick leave pay. (Dkt. 22). According to Texas law, vacation pay and sick leave pay owed to an employee under a written policy or agreement with the employer are considered wages. Tex. Lab. Code § 61.001(7)(B). Givens has not provided any evidence of such a written policy or agreement that would show that she was entitled to vacation pay or sick leave pay. Defendants have provided her pay stubs which do in fact show that plaintiff received vacation and sick leave pay (Dkt. 22-6). Summary judgment should be granted to defendant on this issue as well.

### Recommendations and Order

For the reasons discussed above, the Court recommends that (1) summary judgment be denied as to the administrative exemption defense and the fluctuating workweek method of calculating unpaid overtime; and (2) summary judgment be granted as to the two-year statute of limitations and plaintiff's claims for unpaid sick leave and vacation pay.[5]

The parties are ordered to submit this case to mediation before a mutually agreed-upon professional mediator, and report the outcome to this court on or before July 13, 2012.

---

[5] The parties have 14 days to file written objections to these recommendations. Failure to file timely objections will limit appellate review to plain error. Fed. R.Civ. P. 72.

Signed at Houston, Texas on May 4, 2012.

Stephen Wm Smith
United States Magistrate Judge